1  Vincent Renda, Esq. (SBN 213985)
   PINNACLE LEGAL P.C.
2  9565 Waples Street, Suite #200
   San Diego, CA 92121
3  Office: (858) 868-5000
   Fax: (866) 303-8383
4  Email: vr@pinlegal.com

5

6  Attorneys for Plaintiffs

7

8                    UNITED STATES BANKRUPTCY COURT

9            EASTERN DISTRICT OF CALIFORNIA (SACRAMENTO)

10
   IN RE:                                    Case No.: 23-22449
11
   DARIN WAYNE DOWD,                         Chapter 7
12
                Debtor.
13
   ----------------------------------------------------
14
   MICHAEL SCHIMMEL, an individual;          Adv. No.:
15 TOMMY LE, an individual; MBOCAL INC.,
   a California corporation,                 **COMPLAINT FOR DETERMINATION
16                                           OF NON-DISCHARGEABILITY OF
                Plaintiffs,                   DEBT PURSUANT TO 11 U.S.C. § 523**
17
          vs.
18
19 DARIN WAYNE DOWD,

20            Defendant.

21

22

23

24        Plaintiffs, Michael Schimmel, Tommy Le and MBOCAL, Inc ("Plaintiffs"), by and through

25 undersigned counsel, hereby file this Complaint for Determination of Non-Dischargeability of Debt

26 Pursuant to 11 U.S.C. § 523 and relief from stay against Debtor/Defendant Darin Wayne Dowd, Jr., and

27 allege as follows:

28

                                              1

## PARTIES

1.     Plaintiff Michael Schimmel ("Schimmel") is an individual who at all times herein alleged has resided within the County of Yolo, California.

2.     Plaintiff Tommy Le ("Le") is an individual who at all times herein alleged has resided within the County of Sacramento, California.

3.     Plaintiff MBOCAL Inc. ("MBOCAL") is a California corporation and at all times herein alleged has conducted business within the County of Placer, California.

4.     Plaintiffs Schimmel, Le, and MBOCAL are collectively referred to herein simply as "Plaintiffs" or the "MOU Investors" (referencing the Memorandum of Understanding of August 30, 2022, detailed below).

5.     Debtor and Defendant Darin Wayne Dowd, Jr. ("Defendant") has at all times herein alleged resided in the County of Sacramento, California.  Defendant filed a Petition under Chapter 7 of the bankruptcy code with this Court on July 25, 2023.

## JURISDICTION AND VENUE

6.     Plaintiffs bring this action pursuant to 11 U.S.C. Secs. 523(a)(2), 523(a)(4) and 523(a)(6). Plaintiffs seek judgment, *inter alia*, determining Defendant's debt to Plaintiffs to be non-dischargeable pursuant to 11 U.S.C. Secs. 523(a)(2), , 523(a)(4) and 523(a)(6).

7.     This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. Sec. 1334, as a civil proceeding arising under the United States Bankruptcy Code or arising in a case commenced under the Bankruptcy Code and 28 U.S.C. Sec. 157 as a civil proceeding which constitutes a core proceeding.

8.     Venue lies in the Eastern District of California pursuant to 28 U.S.C. Sections 1408(1) and 1409(a).

## NATURE OF THE ACTION

9.     Plaintiffs bring this action to enforce their legal and equitable rights to a share in beneficial use and profit from valuable licensing rights and revenues stemming from the purchase, sale and marketing of ammunition and related products with the branding, approval and endorsement of the estate

of famous U.S. Navy SEAL sniper Chris Kyle (the hero of the 2014 movie "American Sniper" and noted spokesperson for disabled veterans) as conveyed by and through Chief Petty Officer Kyle's widow, Taya Kyle.

10.    Plaintiffs were induced by promises of profits from this venture to provide over a million dollars to Defendant, his family, and a corporation controlled by Defendant and his family, who then failed to use those monies for the purposes for which Defendant promised these monies would be used (legal and licensed purchase and importation into the United States of ammunition for branding and sale). Defendant instead used those monies to purchase and sell ammunition for which he failed to obtain US licensing and pocketed the proceeds, while claiming to be trying to reimburse Plaintiffs. No such repayment has been made, even in part.

11.    As detailed below, Defendant actively furthered this scheme by (fraudulently and preferentially) transferring the Kyle/American Sniper licensing rights to a new entity without regard for Plaintiffs' pre-existing and agreed-to ownership rights therein, purchased by Plaintiffs via their fully performed obligations to invest the $1.2 million dollars. Plaintiffs are informed and believe that this new entity has made substantial profits from this fraudulent transfer without any compensation to Plaintiffs for either their investments or the share of profits which they expected and to which they are entitled.

## GENERAL ALLEGATIONS

12.    On or about August 19, 2022, Plaintiffs Schimmel and Le and other potential investors met with Defendant. to discuss their investment in United Forces Enterprises, G.P. ("UFE"), a general partnership which held the licensing rights to brand and sell ammunition and related products using the name and likeness and associated intellectual properties of U.S. Navy SEAL Chief Petty Officer Chris Kyle, (the hero of the 2014 movie "American Sniper" and noted spokesperson for disabled veterans) as conveyed by and through Chief Petty Officer Kyle's widow, Taya Kyle on behalf of CPO Kyle's estate.

13.    As of August 19, 2022, UFE's partners included Defendant and his brother Jacob Dowd.

14.    Defendant at this time and/or in subsequent oral and written communications between August 19 and August 30 of 2022, made a number of oral representations of facts to Plaintiffs which Plaintiffs considered important and material to their decisions to do business with UFE and Defendant.

3

15.    These oral representations (many of which are evidenced by contemporaneous or subsequent writings) included but were not limited to the following:

a)    Defendant stated to Plaintiffs that he was a partner in UFE, duly authorized by the general partnership to make offers and enter into agreements regarding the terms of Plaintiffs' prospective investments and their involvement with UFE going forward. This included terms of lending and repayment and terms under which Plaintiffs would be granted an ownership share in any later ventures, as well as a share in licensing rights and revenues from the Kyle intellectual properties and brand, including the "American Sniper" brand name for ammunition sales.

b)    Defendant stated to Plaintiffs that UFE's partners, including himself, were experienced in the business of ammunition procurement (both domestically and overseas) as well as ammo marketing and distribution and as such they stood to make considerable profits from the Kyle licensing agreement. However, UFE needed money to purchase high volumes of ammunition to make the most profitable use thereof while CPO Kyle's reputation was still fresh in the minds of prospective purchasers.

c)    UFE had borrowed over one million dollars from outside investors in the past and had always paid them back timely and in full.

d)    The first priority for UFE's use of the funds to be invested by Plaintiffs was to purchase a large quantity of ammunition for importation from the Czech Republic from Max Merlin, a large-scale ammo supplier with established relationships with the military forces of the Czech Republic as well as a history of dealings with major U.S. companies and the United States government itself.

16.    By August 30, 2022, the parties had reached a mutual understanding based on Defendant's representations that their cooperation in marketing and selling ammunition and related products under the "American Sniper" brand name would be mutually profitable and beneficial, with Plaintiffs expecting to both recoup their initial investments, plus interest, and to receive substantial

profits as well both in the near future and long-term. The details of these expectations and obligations were memorialized in a written Memorandum of Understanding ("MOU") executed by all parties on or about August 30, 2022. The percentages of the ownership shares promised to Plaintiffs and terms of all parties' agreement related thereto were detailed in this Memorandum of Understanding.  A true and correct copy of the MOU is attached hereto as **Exhibit 1**.  Defendant signed the MOU as Vice President of UFE, and his brother Jacob Dowd signed as President of UFE

17.    Under the terms of the MOU, a business venture was entered into between Plaintiffs, on the one hand, and Defendant and the other existing partners in UFE as of August 30, 2022, on the other hand. Plaintiffs expressly stated verbally and via written communications to Defendant as a representative of UFE and individually, that they would not invest in the enterprise later described in the MOU (e.g., buying and selling ammunition using the Kyle branding including "American Sniper") unless they were given rights of ownership and control as later described and agreed to in the MOU. Those rights were promised in the MOU and based on those promises, Plaintiffs invested their monies and otherwise performed. A lawful agreement with clear terms and mutual obligations was proposed, negotiated, evidenced in writing and signed. Plaintiffs' substantial performance timely followed.

18.    Plaintiffs are presently informed and believe that the incorporation agreed to in the MOU was never formalized in violation of the agreements evidenced by the MOU despite Plaintiffs' substantial performance of their own duties and obligations under those agreements. Notwithstanding this, based on the facts and circumstances cited in this Complaint generally and/or those alleged herein, beginning on August 30, 2022, to the present date,

19.    Plaintiffs are equitably and legally entitled to the remedies and rights due to shareholders, owners, officers and directors of a corporation vis-a-vis claims involving those persons and entities who (by agreeing to the MOU) promised Plaintiffs they would so treat them in return for over a million dollars of Plaintiff's money, including Defendant, Jacob, UFE and its partners (who were represented by the Defendant in entering into the MOU and the agreements it evidences).

20.    Pursuant to the terms of the MOU, Plaintiffs received written promissory notes memorializing their payment of all sums demanded of them under the terms of the MOU and promising repayment with interest. UFE accepted these sums and the funding required by UFE under the terms of the

COMPLAINT FOR DETERMINATION OF NON-DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523

MOU was full and satisfactorily paid by September 2022. True and correct copies of each of those promissory notes are attached hereto as **Exhibits 2, 3, 4, 5, and 6**.

21.     Under the terms of the MOU, among other things, UFE and Plaintiffs agreed that UFE's existing structure as a general partnership would be restructured to reflect Plaintiffs' ownership and control in accordance with the percentages stated in the MOU in a corporation rather than a general partnership, the details of which were to be specified in separate subsequent agreements. Defendant and Jacob Dowd were to maintain control over day-to-day operations of this corporation based on their purported expertise, knowledge of the business operations then existing, and their contacts with suppliers and other relevant third parties including, but not limited to, Max Merlin.

22.     By the end of September 2022, the parties had agreed to the terms of the UFE enterprise and Plaintiffs had paid the monies required of them under the MOU. By this date, Plaintiffs had thus substantially performed their obligations memorialized in the MOU, entitling them to all benefits and rights promised under the MOU, including but not limited to ownership shares in all properties and assets of UFE (including the Kyle licensing agreements and related intellectual property rights).

23.     On or about the end of September 2022, Plaintiffs also met UFE's main ammo broker Eli Lazar who was in charge of Alpha Omega Brokerage based in Las Vegas, Nevada. Based on the financial documents provided by UFE to Plaintiffs to that date, this relationship was important to the UFE's enterprise's success as the brokerage had been paid over $500,000.00 in commissions from 2020 to 2022.

24.     Plaintiffs discussed the relationship's prospects and expectations going forward now that UFE was to be reformed and funded by Plaintiffs. Mr. Lazar represented to Plaintiffs that he was solely focused on the American Sniper branded ammo and wanted it to be manufactured in the United States. However, Mr. Lazar indicated he had poor business relations with Jacob Dowd in the past. Thus, Plaintiffs, Defendant and Jacob Dowd conferred and agreed that within the UFE enterprise going forward, Defendant along with Mr. Lazar would focus on building the American Sniper brand for domestic production.

25.     Beginning in October 2022, UFE and Defendant disclosed financial records to Plaintiffs which revealed for the first time that substantial sums from the money which Plaintiffs invested pursuant

COMPLAINT FOR DETERMINATION OF NON-DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523

to the agreements memorialized in the MOU were being spent on the personal expenses of Defendant, his family members and otherwise questionably or improperly (e.g., other than to fund the purchase of ammunition from Max Merlin). The parties discussed their concerns and oral assurances were made to Plaintiffs by Defendant in his capacity as a partner of UFE (and an officer of the UFE corporation called for in the MOU) that these sums would be reimbursed to UFE (the existing general partnership or the successor corporation which was to be formed under the terms of the MOU).

26.    Given that the documents provided by UFE to Plaintiffs also showed that substantial payment had been made to Max Merlin, Plaintiffs were satisfied based on what they knew at this time that this was not a "deal breaking" concern for their investment and the UFE enterprise going forward. Also included in these documents were standing purchase orders for the ammunition to be procured from Max Merlin, executed by Ammo, Inc. Ammo, Inc. was a longstanding UFE customer who had done substantial business with UFE in the past in quantities and payment amounts similar to those involved with the Max Merlin purchase/sale.

27.    At the end of November 2022, Jacob represented to Plaintiffs orally, in his capacity as a partner in UFE and an officer of the UFE corporate enterprise agreed to in the MOU, that he was having issues with the export license, and he was not able to meet the shipping deadlines of December 2022 called for in the purchase orders. Jacob suggested that Plaintiffs investigate and consider shipping by air rather than sea. This would add at least four hundred thousand dollars ($400,000) to UFE's shipping costs but would ensure shipment by the end of 2022. Based on the terms and conditions represented to Plaintiffs by UFE at that time, Plaintiffs were informed and believed that the UFE corporate enterprise would still receive approximately three million dollars ($3,000,000) in revenue under those terms and they agreed to proceed as Jacob suggested.

28.    Throughout December 2022 and January 2023, Jacob represented to Plaintiffs verbally (in his capacity as a partner in UFE and an officer of the UFE corporate enterprise agreed to in the MOU) that UFE was encountering licensing and/or shipping issues with the Max Merlin order and shipment of ammunition from the Czech Republic. Due to the delay, the UFE enterprise requested that Mr. Lazar assist Jacob with the Max Merlin deal.

29.    At this time Plaintiffs also met with other vendors, counsel and representatives involved

COMPLAINT FOR DETERMINATION OF NON-DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523

with UFE's prior operations and with representatives of the Kyle estate and business ventures related to the "American Sniper" intellectual property.

30. In early February 2023, Plaintiff Michael Schimmel received a telephone call from UFE partner Dave Roberts regarding "bad news about UFE". Mr. Roberts asked Mr. Schimmel to come to a meeting with him and Defendant in Sacramento. At that in-person meeting, Mr. Roberts, and Defendant informed Mr. Schimmel that Defendant, Jacob, and Eli Lazar had all been contacted by ATF prior to UFE's business offices being raided by ATF officers. Defendant and Mr. Roberts (in their capacities as partners in the former UFE enterprise and officers in the new UFE enterprise) represented to Mr. Schimmel that this situation was "all Jacob's fault" in that the ammo Jacob had purchased from Max Merlin was "tracer ammunition" and could not be imported legally into the US without law enforcement or military approval.[1]

31. Mr. Roberts and Defendant told Mr. Schimmel that the only option was to try to get a refund from Max Merlin or sell the ammunition back to an overseas buyer.

32. Shortly after the ATF raid incident, Defendant (in his capacity as a partner of UFE and an officer in the new UFE enterprise/corporation to be formed) informed Mr. Schimmel that UFE was "running out of money" and was soliciting financial assistance and involvement in the UFE enterprise from his parents, Darin Dowd, Sr. ("Darin Sr.") and Jennifer Dowd. Defendant represented that his parents would be paying legal bills and were offering to help finance the UFE enterprise's domestic operations, as well as loaning money to Defendant to reimburse lenders (including Plaintiffs herein).

33. On or about mid-February of 2023, Mr. Schimmel met with Defendant, Defendant's spouse, Darin Sr., and Jennifer Dowd at Defendant's residence in Sacramento, California. They discussed how lenders were going to be paid and the future of UFE. Darin Sr. stated that lenders, including Plaintiffs herein, would have to be patient until the Dowd family could get the ammunition in the

---

[1] Tracer ammunition contains chemicals which leave a visible trail along a bullet's trajectory when it is fired. It is specially regulated in large part because (a) these chemicals are unusually combustible or otherwise hazardous and (b) this property makes tracer ammunition useful in fully automatic weapons to assist a shooter in directing a stream of bullets onto a target. With fully automatic weapons being highly restricted in the United States, there is a strong implication that tracer rounds are going to be employed in fully automatic weapons and thus officials wish to have more information and control over the importation and distribution of those rounds as a means to help discover who might be employing unregistered or unlicensed automatic weapons.

COMPLAINT FOR DETERMINATION OF NON-DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523

Czech Republic sold, and wait for UFE's domestic production to cash flow. Darin Sr.'s actual role was unidentified, with Defendant and Jacob apparently deferring to their father for decision making, although Darin Sr. did not have any official or formal role via the documents and information available to Plaintiffs at the time, including the MOU.

34.     Plaintiff Schimmel had several telephone conversations with Darin Sr. subsequent to the February 2023 meeting wherein Mr. Schimmel proposed that Darin Sr. make a loan to Defendant to pay a substantial portion of the principal still owed to Plaintiffs on the promissory notes. This would be a sign of good faith. No such loan was made.

35.     Plaintiffs are informed and believe that on or about February 24, 2023, Darin Sr. and Defendant created a California limited liability company called "AS Ammunition LLC" ("ASA"). Plaintiffs are further informed and believe based on subsequent investigation that the Kyle licensing rights (including the "American Sniper" brand licensing for ammunition) had been transferred to AS without consideration, just compensation, or prior consent or knowledge of Plaintiffs despite their agreed-upon ownership rights in the UFE enterprise and its assets (including the Kyle/"American Sniper" licensing rights).

36.     By May 2022, having been effectively frozen out of involvement with the UFE enterprise and with Defendant's continued non-responsiveness, Plaintiffs were forced to seek alternatives to sell the Max Merlin ammunition lawfully overseas. To facilitate that effort, Plaintiffs entered into a "Consulting Agreement" with Eli Lazar and Chief Compliance Officer for UFE, Paul Jannuzzo, former CEO of Glock (the Czech Republic gun manufacturer). Despite Plaintiffs' payment of ten thousand dollars ($10,000) for this consulting agreement and Mr. Jannuzzo's purported efforts (including what he represented as a two-week stay in the Czech Republic attempting to work out a deal favorable to Plaintiffs), Mr. Lazar and Mr. Jannuzzo informed Plaintiffs as of the end of July 2023, that Max Merlin had made a separate deal with Jacob to allow Jacob to resell the ammunition purchased by UFE to Max Merlin. Mr. Lazar and Mr. Jannuzzo further informed Plaintiffs that Jacob was seeking to immigrate to Israel (from which U.S. civil or criminal jurisdiction for the misconduct herein alleged can be effectively frustrated and avoided indefinitely). A true and correct copy of the Consulting Agreement is attached as **Exhibit 7**.

37.     Plaintiffs are informed and believe based on their investigation to date that:

1)     Defendant and Darin Sr., along with Eli Lazar and Paul Jannuzzo, a r e currently selling "American Sniper" branded ammo in the United States under the Kyle licensing agreement, which has been transferred from UFE to ASA without consideration, just compensation, or Plaintiffs' consent. Defendant is a member, manager, or officer in the ASA entity, which has effectively usurped the rights, properties, assets, and identity of UFE; and

2)     Jennifer Dowd has recently published posts on social media regarding how proud she is of Defendant and his ongoing involvement with the Kyle estate/Taya Kyle and has "done so well". This is all contrary to the recent representations made by Darin Sr., Jacob, Lazar and Jannuzzo to Plaintiffs and/or the public at large regarding Defendant's non-involvement with the ASA "rebranded" enterprise.

38.     The facts set forth above are the basis of a Complaint filed in the Sacramento Superior Court, against Darin Dowd Sr., Jacob Dowd, UFE and ASA, alleging causes of action for civil RICO, receipt of stolen property, breach of fiduciary duty, constructive fraud, fraud, unlawful/fraudulent business practices/competition in violation of Cal. Corp. Code §17200, et seq.), actual intent to hinder, delay, or defraud creditors in violation of Cal. Civ. Code, § 3439.04(b)), breach of contract as to the promissory notes signed by Defendant, and for an accounting. Defendant was not named in that action as it was filed after his Chapter 7 petition. Plaintiffs now seek a determination that the debt owed to them by Defendant is non-dischargeable, and for the entry of an order allowing them to proceed against Defendant in the state court action.

## FIRST CLAIM FOR RELIEF
[11 U.S.C. §523(a)(4)]
(Breach of Fiduciary Duty)

39.     Plaintiffs hereby repeat and incorporate all prior allegations as if fully stated herein.

40.     Section 523(a)(4) excepts from discharge any debt incurred due to "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."

41.     At all times since Plaintiffs and Defendant made the promises, agreements and

COMPLAINT FOR DETERMINATION OF NON-DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523

representations memorialized in or related to the MOU (as alleged at Paragraphs 12 through 37 above), Defendant owed a duty to Plaintiffs and to the UFE enterprise which was described and agreed upon in the MOU, prior to any wrongdoing by Defendant, to avoid any conflict of interest which would result in placing his own interests ahead of those of the enterprise itself or the other shareholders, members or owners of interests in that enterprise (including Plaintiffs).

42.     Moreover, the MOU created a technical trust by requiring Defendant to deal equitably with the contribution made by Plaintiffs for Plaintiffs' benefit.

43.     The conduct of Defendant alleged in Paragraphs 12 through 37 above, constituted a breach of this fiduciary duty to Plaintiffs in that, among other things, monies ostensibly invested in the UFE enterprise were in fact used for Defendant's personal or separate business expenses and licensing rights and profits therefrom which were owned by Plaintiffs and/or the UFE enterprise were misused and fraudulently transferred to ASA.

44.     These breaches of fiduciary duties were a substantial factor in causing Plaintiffs to suffer damages including but not limited to lost profits, compensation and business opportunities and advantages, damage to personal and business reputation and goodwill and severe emotional distress and depression. The conduct of Defendant as herein alleged is fraudulent, oppressive, malicious and/or criminal, demonstrating either direct intent to harm or reckless disregard for the consequences of their deliberate actions which were substantially certain to result in such harm, to entitle Plaintiffs to punitive damages under Civil Code §3294.

## SECOND CLAIM FOR RELIEF
### 11 U.S.C. § 523(a)(4)
### (Embezzlement)

45.     Plaintiffs hereby repeat and incorporate all prior allegations as if fully stated herein.

46.     Section 523(a)(4) excepts from discharge any debt incurred due to embezzlement.

47.     Plaintiffs entrusted Defendant with funds that were to be used for the legal and licensed purchase and importation into the United States of ammunition for branding and sale. Defendant instead has used those monies for personal expenses and to purchase and sell ammunition for which he failed to obtain US licensing and pocketed the proceeds, thus using those funds for purposes other than that for which they were entrusted to him.

48.    The circumstances pursuant to which Plaintiffs' funds were misappropriated indicate fraud in that the funds were used for personal purposes shortly after those funds came under Defendant's control, and Defendant was or should have been aware of the purpose for which Plaintiffs invested the funds.

### THIRD CLAIM FOR RELIEF
11 U.S.C. § 523(a)(2)(A)
(False Pretenses, False Representation or Actual Fraud)

49.    Plaintiffs hereby repeat and incorporate all prior allegations as if fully stated herein.

50.    11 U.S.C. § 523(a)(2)(A) excepts from discharge and debt that is obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

51.    As detailed in Paragraphs 12 through 37, above, Defendant made misrepresentations of material facts to Plaintiffs regarding the use to which he intended to make of monies invested by Plaintiffs and materially misrepresented to Plaintiffs the nature and extent of the rights to which he was in fact promising and conveying to Plaintiffs in order to induce Plaintiffs to give the Defendant these large sums of monies.

52.    In light of the conduct of Defendant detailed in Paragraphs 12 through 37, above, Plaintiffs are informed and believe that Defendant knew the representations and promises he made to Plaintiffs were false at the time Defendant made those representations and that Defendant made those promises to Plaintiffs with no intent to honor them, but rather as a knowing and intentional deceitful scheme to induce Plaintiffs to give Defendant their money under false pretenses.

53.    As detailed, Plaintiffs justifiably relied upon the misrepresentations made to them by Defendant in light of, among other things, Defendant's purported record, experience and history of timely full repayment to investors represented to Plaintiffs by Defendant. Had Plaintiffs known of the true intentions of Defendant as to the use of Plaintiffs' monies or that Defendant would not in fact honor any agreement to grant Plaintiffs the ownership rights promised by Defendant in the "American Sniper" brand and associated intellectual properties (as well as the UFE corporate entity described and promised in the MOU), Plaintiffs would not have invested monies with Defendant or entered into the agreements described in this complaint.

54.    The misrepresentations detailed in Paragraphs 12 through 37 above were a substantial factor

12

in inducing Plaintiffs to enter into the transactions and agreement detailed herein and in causing Plaintiffs to suffer resulting damages including but not limited to lost profits, compensation and business opportunities and advantages, damage to personal and business reputation and goodwill and severe emotional distress and depression.

### FOURTH CLAIM FOR RELIEF
11 U.S.C. § 523(a)(6)
(Willful and Malicious Injury)

55.     Plaintiffs hereby repeat and incorporate all prior allegations as if fully stated herein.

56.     11 U.S.C. § 523(a)(6) provides that a debtor may not discharge a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."

57.     Defendant undertook the wrongful actions described above with the intent to, and for the purpose of, causing injury to Plaintiffs, including causing them to lose substantial sum of money by using the funds invested by Plaintiffs for other than the purpose for which those funds were invested.

58.     Debtor's actions were without just cause or excuse.

### PRAYER FOR RELIEF

Wherefore, Plaintiffs pray judgment against the Defendant as follows:

a)      an order of the Court that the debts of Defendant, personally and/or by and through UFE owed to Plaintiffs are non-dischargeable under 11 U.S.C. §§ 523 (a)(2)(A), 523 (a)(4) and/or 523 (a)(6);

b)      an order confirming that because the debt is non-dischargeable, Plaintiffs may prosecute claims related to the debt in the state court proceeding;

c)      statutory interest, attorney's fees, and litigation costs according to proof; and

d)      such other and further relief which the Court finds reasonable, necessary, or appropriate.

Dated: October 23, 2023                          PINNACLE LEGAL P.C.

By: /s/ Vincent Renda, Esq.
Vincent Renda, Esq.
Attorney for Plaintiffs

COMPLAINT FOR DETERMINATION OF NON-DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523

Exhibit 1

# MEMORANDUM OF UNDERSTANDING

THIS MEMORANDUM OF UNDERSTANDING (this "MOU"), dated as of August 30, 2022 ("Effective Date"), is made and entered into by and among Tommy Le, individually, Michael Schimmel, individually, Dave Roberts, individually and United Forces Enterprises (UFE), GP, a California General Partnership, with Tommy Le, Michael Schimmel, Dave Roberts, the "Parties".

## Recitals

A. ("Parties") intends to provide UFE a $50,000,000 investment/line of credit (LOC) for future business as well as a $1,000,000 loan for a 30% membership interest in United Forces Enterprises, GP.

B. In conjunction with their proposed investment in "UFE", The Parties have requested, and partners of "UFE" have agreed to, certain collateral rights to be provided to the Parties.

C. The Parties mutually wish to memorialize their agreement regarding these collateral rights in this MOU.

NOW, THEREFORE, in consideration of the foregoing, the Parties agree as follows:

## Agreement

1. UFE short term loan. The "Parties" shall raise $1,000,000, $750,000 of which shall be funded no later than August 30, 2022 and the remaining $250,000 of which to be funded by September 2, 2022. The terms of this loan are as follows: Signed promissory notes for up to $1,000,000 if required by lender all funds including principal and interest to be paid back by November 27, 2022. The notes and deeds of trust shall be executed prior to funding if required by lender. The Parties fully intend to fund the upcoming orders that UFE has currently been working on including an additional $1,600,000 for 7.62x39mm ammo invoices and $2,200,000 in small pistol / rifle primer orders.

2. Additional Funding of United Forces Enterprises. The Parties intend to provide an initial $10,000,000 investment line of credit from their investment group by October 15, 2022. The remaining $40,000,000 investment line of credit shall be provided from the Parties investment group by 06/01/23. The LOC would be used to pay for all new purchase/product orders including, but not limited to, deposits and remaining balances on invoices from the company's manufacturing partners related to purchase orders executed by UFE. UFE agrees to provide all the requested financial documentation required to obtain the funding, such as, contracts, purchase orders, invoices, etc. The funds are to be dispatched to UFE's business checking account, once all requested financial documentation has been provided to the Parties and verified. These funds would be set aside in UFE's account exclusively for new business.

UFE would agree to allocate the new corporate membership interest as follows:

Jacob Dowd – 35%
Darin Dowd – 35%
Dave Roberts – 15%
Tommy Le – 7.5%
Michael Schimmel – 7.5%

Jacob Dowd and Darin Dowd agree to allow a waterfall agreement of equity to Tommy Le and
Michael Schimmel once the Parties have successfully deployed $10,000,000 of the $50,000,000
in total funds towards material invoices for the products. Once the $10,000,000 in funds have
been deployed to UFE, exclusively for new business, the new corporate equity structure would
be revised as follows:

Jacob Dowd – 30%
Darin Dowd – 30%
Dave Roberts – 15%
Tommy Le – 12.5%
Michael Schimmel – 12.5%

United Forces Enterprises annual sales:

| | | |
|---|---|---|
| 2021. | $21,000,000 gross revenue | |
| 2022. | $25,000,000 projected/estimated gross revenue | |
| 2023. | $60,000,000 projected/estimated gross revenue | |

If the Parties are unable to successfully fund $10,000,000 in new orders for UFE within 6
months, Tommy Le and Michael Schimmel equity share will be reduced to zero and Dave
Roberts equity share will be reduced from 15% to 10%.

3. Promissory Note for Dave Roberts. Dave Roberts will be given a promissory note in the
amount of $2,225,000. Jacob Dowd, Darin Dowd and Dave Roberts will execute the terms of the
promissory note by September 1, 2022. The terms would be payable over a 24-month period at
zero percent interest by Jacob Dowd and Darin Dowd personally.

4. UFE Emerging Markets. UFE agrees to allow the Parties to create a new division of the
company to explore business opportunities in emerging markets. This would include but not
limited to South America, Asia and the Middle East. Tommy Le would be given the title Director
of Emerging Markets for United Forces Enterprises. Profit sharing and structure to be determined
later as business develops.

5. Corporate Structure. The current status of operating a UFE as a General Partnership will need
to be amended by UFE and the Parties to a corporation in the future. This can be mutually
decided upon after consulting legal and accounting expertise. New corporate formation to be
executed prior to UFE Federal Firearms License expiration date on July 1, 2023. Jacob
Dowd/President and Darin Dowd/Vice-President will continue to handle day to day operations.

6. Definitive Agreements. The Parties intend to enter into definitive agreements (the "Agreements") to effectuate the matters set forth in this MOU. California law shall govern such Agreements. Untied Forces Enterprises and the Parties shall cooperate in good faith to affect the transactions contemplated by this MOU.

7. Releases. Each party shall release all claims (including unknown claims), liabilities, damages and causes of action arising out of facts, circumstances, acts or representations which occurred prior to the effective date of the Agreements.

8. Confidentiality. All information furnished by any party to the others or to any of their representatives will be held in strict confidence by the party receiving such information and will not be disclosed to any third party except to representatives who need access to the information in order to work on the proposed transactions. If the transactions are not consummated, each party and its representatives will return to the other all originals and all copies of any such information, will retain no such information in its files, and will not use to its commercial advantage any information obtained of or about the others which reasonably could presumed to be of a confidential nature. Without limiting the forgoing, no party will disclose the existence or content of this MOU or discussions among the parties relating to the activities and transactions contemplated herein unless the parties mutually agree in writing upon such disclosure. Each party consents to the disclosure of this MOU and information related hereto to potential funding sources for United Forces Enterprises.

9. Termination. Any party may terminate its involvement in this MOU immediately in the event of a breach of any provision of this MOU by any other party. Further, unless extended by a mutually acceptable written instrument duly executed by all Parties, this MOU will automatically terminate on September 1, 2022.

10. Governing Law. This MOU shall be governed by and construed in accordance with the laws of the State of California without reference to conflicts of law provisions thereof.

11. Entire Agreement. This MOU constitutes the entire agreement among the Parties with respect to its subject matter and merges all prior and contemporaneous communications, both written and oral. This MOU shall not be modified except by a written agreement signed by all Parties.

12. Costs. Each party shall bear its own costs and expenses in connection with this MOU and the transactions contemplated hereby.

13. Relationship of the Parties. Neither this MOU, nor any activities described herein, shall be construed as creating a partnership, joint venture, franchise, agency or other such relationship among the Parties. No party has the right, power or authority to obligate or bind any other party in any manner whatsoever without such other party's prior written consent.

14. Definitive Agreements. Promptly following the execution of this MOU, the Parties shall diligently proceed to preparing definitive agreements consistent with the terms of this MOU, which shall contain terms and conditions customary for agreements of this type. It is contemplated that Tommy Le, Michael Schimmel, and Dave Roberts (and their legal counsel)

shall be responsible for preparing the initial draft of any Agreements/documents consummating any of the above proposed transactions.

15. Signatures. This MOU may be executed in multiple counterparts each of which shall be considered an original and all of which shall be considered one and the same instrument. Signatures received by facsimile, PDF file or other electronic format shall be deemed to be original signatures.



IN WITNESS WHEREOF, a duly authorized representative of each of the Parties has executed and delivered this MOU as of the Effective Date.

**UNITED FORCES ENTERPRISES, GP**

**JACOB DOWD**

Signature:

Name: _Jacob Dowd_

Title: _PRESIDENT_

Date: August 30, 2022

**TOMMY LE**

Signature:

Name: _Tommy Le_

Title: _Private Office_

Date: August 30, 2022

**Darin Dowd**

Signature:

Name: _Darin Dowd_

Title: _VICE PRESIDENT_

Date: August 30, 2022

**Dave Roberts**

Signature:

Name: _Dave Roberts_

Title: _____

Date: August 30, 2022

**Michael Schimmel**

Signature:

Name: _Michael Schimmel_

Title: _____

Date: August 30, 2022

NOTARY
CERTIFICATION
ATTACHED

See the attachment For Notary

4

# CALIFORNIA ALL- PURPOSE CERTIFICATE OF ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California _____ }

County of Sacramento _____ }

On 8/30/2022 _____ before me, Manmeet Walia, Notary Public
(here insert name and title of the officer)

personally appeared Darin Wayne Dowd _____,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public Signature                    (Notary Public Seal)

> MANMEET WALIA
> COMM. # 2256170
> NOTARY PUBLIC • CALIFORNIA
> SACRAMENTO COUNTY
> Comm. Exp. SEPT. 23, 2022

---

**ADDITIONAL OPTIONAL INFORMATION**

DESCRIPTION OF THE ATTACHED DOCUMENT

Memorandum of Understanding
(Title or description of attached document)

_____
(Title or description of attached document continued)

Number of Pages 5 Document Date ____

CAPACITY CLAIMED BY THE SIGNER
- ☐ Individual (s)
- ☐ Corporate Officer
  _____ (Title)
- ☐ Partner(s)
- ☐ Attorney-in-Fact
- ☐ Trustee(s)
- ☐ Other _____

2015 Version www.NotaryClasses.com 800-873-9865

**INSTRUCTIONS FOR COMPLETING THIS FORM**

*This form complies with current California statutes regarding notary wording and, if needed, should be completed and attached to the document. Acknowledgments from other states may be completed for documents being sent to that state so long as the wording does not require the California notary to violate California notary law.*

- State and County information must be the State and County where the document signer(s) personally appeared before the notary public for acknowledgment.
- Date of notarization must be the date that the signer(s) personally appeared which must also be the same date the acknowledgment is completed.
- The notary public must print his or her name as it appears within his or her commission followed by a comma and then your title (notary public).
- Print the name(s) of document signer(s) who personally appear at the time of notarization.
- Indicate the correct singular or plural forms by crossing off incorrect forms (i.e. he/she/they, is /are ) or circling the correct forms. Failure to correctly indicate this information may lead to rejection of document recording.
- The notary seal impression must be clear and photographically reproducible. Impression must not cover text or lines. If seal impression smudges, re-seal if a sufficient area permits, otherwise complete a different acknowledgment form.
- Signature of the notary public must match the signature on file with the office of the county clerk.
  - ✧ Additional information is not required but could help to ensure this acknowledgment is not misused or attached to a different document.
  - ✧ Indicate title or type of attached document, number of pages and date.
  - ✧ Indicate the capacity claimed by the signer. If the claimed capacity is a corporate officer, indicate the title (i.e. CEO, CFO, Secretary).
- Securely attach this document to the signed document with a staple.

Exhibit 2

# *PROMISSORY  NOTE*

**$250,000.00  Date: Monday January 26, 2023**

For value received, the undersigned **United Forces Enterprises GP, Jacob Dowd, personally and Darin Dowd, personally** of 2581 Nut Tree Road Suite A Vacaville, California 95 (the "Borrower"), promises to pay to the order of **Tommy Le** of 2335 American River Drive Suite 200 Sacramento, California 95825 (the "Lender"), the sum of **$250,000.00** with interest **from August 29, 2022,** on the unpaid principal at the rate of **25% per year.**

## I. TERMS OF REPAYMENT

### A. Payments

The unpaid principal and accrued interest shall be payable in a balloon payment on Due Date with interest beginning **on August 29, 2022,** and continuing until **February 28, 2023, (the "Due Date"),** at which time the remaining unpaid principal and interest shall be due in full.  The principal of **$250,000.00** plus interest and margin of **$101,250.00** will be paid to lender on the Due Date.

### B. Application of Payments

All payments on this Note shall be applied first in interest and the final payment to include all principal and remaining interest.

### C. Late Fee

The Borrower promises to pay a late charge of $500.00 for each installment that remains unpaid more than **5 day(s) after its Due Date.** This late charge shall be paid as liquidated damages in lieu of actual damages, and not as a penalty. Payment of such late charge shall, under no circumstances, be construed to cure any default arising from or relating to such late payment.

The Borrower promises to pay a default interest rate of **40% annually** on the entire principal if the borrower does pay all the principal and interest in full by **February 28, 2023**.

### D. Acceleration of Debt

If any payment obligation under this Note is not paid when due, the remaining unpaid principal balance and any accrued interest shall become due immediately at the option of the Lender.

## II.  PREPAYMENT

The Borrower reserves the right to prepay this Note (in whole or in part) prior to the Due Date with no prepayment penalty. Any such prepayment shall be applied against the installments of principal due under this note in the inverse order of their maturity and shall be accompanied by

payment of accrued interest on the amount prepaid to the date of prepayment.

## III. COLLECTION COSTS

If any payment obligation under this Note is not paid when due, the Borrower promises to pay all costs of collection, including reasonable attorney fees, whether or not a lawsuit is commenced as part of the collection process.

## IV. DEFAULT

If any of the following events of default occur, this Note and any other obligations of the Borrower to the Lender, shall become due immediately, without demand or notice:

    1) the failure of the Borrower to pay the principal when due;

    2) the liquidation, dissolution, incompetency or death of the Borrower;

    3) the filing of bankruptcy proceedings involving the Borrower as a debtor;

    4) the application for the appointment of a receiver for the Borrower;

    5) the making of a general assignment for the benefit of the Borrower's creditors;

    6) the insolvency of the Borrower;

    7) a misrepresentation by the Borrower to the Lender for the purpose of obtaining or extending credit; or

    8) the sale of a material portion of the business or assets of the Borrower.

## V. SEVERABILITY OF PROVISIONS

If any one or more of the provisions of this Note are determined to be unenforceable, in whole or in part, for any reason, the remaining provisions shall remain fully operative.

## VI. MISCELLANEOUS

All payments of principal on this Note shall be paid in the legal currency of the United States. The Borrower waives presentment for payment, protest, and notice of protest and demand of this Note.

No delay in enforcing any right of the Lender under this Note, or assignment by Lender of this Note, or failure to accelerate the debt evidenced hereby by reason of default in the payment of a monthly installment or the acceptance of a past-due installment shall be construed as a waiver of the right of Lender to thereafter insist upon strict compliance with the terms of this Note without notice being given to Borrower. All rights of the Lender under this Note are cumulative and may be exercised concurrently or consecutively at the Lender's option.

This note may not be amended without the written approval of the holder.

## VII. GOVERNING LAW

This Note shall be construed in accordance with the laws of the State of California.

## VIII. GUARANTY

**United Services Enterprises GP, Jacob Dowd, personally, and Darin Dowd, personally unconditionally guarantees** all the obligations of the Borrower under this Note and agrees that any modifications of the terms of payment or extension of time of payment shall in no way impair its guarantee, and expressly agrees its guarantee of any modifications or extensions of this Note.

## IX. SIGNATURES

This Note shall be signed by United Forces Enterprises, Jacob Dowd, Darin Dowd and Tommy Le.

**[SIGNATURE PAGE
FOLLOWS]**

**IN WITNESS WHEREOF,** this Agreement has been executed and delivered in the manner prescribed by law as of the date first written above.

Signed this 26th day of January 2023, at Sacramento, California.


Borrower:

United Services Enterprises GP, Jacob Dowd and Darin Dowd


By: _____
             Jacob Dowd

By: _____
             Darin Dowd



Lender:

Tommy Le



By: _____
             Tommy Le

ASSIGNMENT

[ONLY COMPLETE THE FOLLOWING INFORMATION TO ASSIGN PAYMENTS TO A NEW PARTY.]

For value received, the above Note is assigned and transferred to

_____, ("Assignee") of

_____ _____
(City)(State/province)


_____
(Country)

Dated: ......................................................

By:_____

                   Tommy Le

# *PROMISSORY  NOTE*

**$250,000.00  Date: Monday January 26, 2023**

For value received, the undersigned **United Forces Enterprises GP, Jacob Dowd, personally and Darin Dowd, personally** of 2581 Nut Tree Road Suite A Vacaville, California 95 (the "Borrower"), promises to pay to the order of **Tommy Le** of 2335 American River Drive Suite 200 Sacramento, California 95825 (the "Lender"), the sum of **$250,000.00** with interest **from August 29, 2022,** on the unpaid principal at the rate of **25% per year.**

## I. **TERMS OF REPAYMENT**

### A. **Payments**

The unpaid principal and accrued interest shall be payable in a balloon payment on Due Date with interest beginning **on August 29, 2022,** and continuing until **February 28, 2023, (the "Due Date"),** at which time the remaining unpaid principal and interest shall be due in full.  The principal of **$250,000.00** plus interest and margin of **$101,250.00** will be paid to lender on the Due Date.

### B. **Application of Payments**

All payments on this Note shall be applied first in interest and the final payment to include all principal and remaining interest.

### C. **Late Fee**

The Borrower promises to pay a late charge of $500.00 for each installment that remains unpaid more than **5 day(s) after its Due Date.** This late charge shall be paid as liquidated damages in lieu of actual damages, and not as a penalty. Payment of such late charge shall, under no circumstances, be construed to cure any default arising from or relating to such late payment.

The Borrower promises to pay a default interest rate of **40% annually** on the entire principal if the borrower does pay all the principal and interest in full by **February 28, 2023**.

### D. **Acceleration of Debt**

If any payment obligation under this Note is not paid when due, the remaining unpaid principal balance and any accrued interest shall become due immediately at the option of the Lender.

## II.  **PREPAYMENT**

The Borrower reserves the right to prepay this Note (in whole or in part) prior to the Due Date with no prepayment penalty. Any such prepayment shall be applied against the installments of principal due under this note in the inverse order of their maturity and shall be accompanied by

payment of accrued interest on the amount prepaid to the date of prepayment.

## Ill. COLLECTION COSTS

If any payment obligation under this Note is not paid when due, the Borrower promises to pay all costs of collection, including reasonable attorney fees, whether or not a lawsuit is commenced as part of the collection process.

## IV. DEFAULT

If any of the following events of default occur, this Note and any other obligations of the Borrower to the Lender, shall become due immediately, without demand or notice:

  1) the failure of the Borrower to pay the principal when due;

  2) the liquidation, dissolution, incompetency or death of the Borrower;

  3) the filing of bankruptcy proceedings involving the Borrower as a debtor;

  4) the application for the appointment of a receiver for the Borrower;

  5) the making of a general assignment for the benefit of the Borrower's creditors;

  6) the insolvency of the Borrower;

  7) a misrepresentation by the Borrower to the Lender for the purpose of obtaining or extending credit; or

  8) the sale of a material portion of the business or assets of the Borrower.

## V. SEVERABILITY OF PROVISIONS

If any one or more of the provisions of this Note are determined to be unenforceable, in whole or in part, for any reason, the remaining provisions shall remain fully operative.

## VI. MISCELLANEOUS

All payments of principal on this Note shall be paid in the legal currency of the United States. The Borrower waives presentment for payment, protest, and notice of protest and demand of this Note.

No delay in enforcing any right of the Lender under this Note, or assignment by Lender of this Note, or failure to accelerate the debt evidenced hereby by reason of default in the payment of a monthly installment or the acceptance of a past-due installment shall be construed as a waiver of the right of Lender to thereafter insist upon strict compliance with the terms of this Note without notice being given to Borrower. All rights of the Lender under this Note are cumulative and may be exercised concurrently or consecutively at the Lender's option.

This note may not be amended without the written approval of the holder.

**VII. GOVERNING LAW**

This Note shall be construed in accordance with the laws of the State of California.

**VIII. GUARANTY**

**United Services Enterprises GP, Jacob Dowd, personally, and Darin Dowd, personally unconditionally guarantees** all the obligations of the Borrower under this Note and agrees that any modifications of the terms of payment or extension of time of payment shall in no way impair its guarantee, and expressly agrees its guarantee of any modifications or extensions of this Note.

**|X. SIGNATURES**

This Note shall be signed by United Forces Enterprises, Jacob Dowd, Darin Dowd and Tommy Le.

**[SIGNATURE PAGE
FOLLOWS]**

**IN WITNESS WHEREOF,** this Agreement has been executed and delivered in the manner prescribed by law as of the date first written above.

Signed this 26th day of January 2023, at Sacramento, California.


Borrower:

United Services Enterprises GP, Jacob Dowd and Darin Dowd


By: _____
              Jacob Dowd


By: _____
              Darin Dowd


Lender:

Tommy Le


By: _____
              Tommy Le

ASSIGNMENT

[ONLY COMPLETE THE FOLLOWING INFORMATION TO ASSIGN PAYMENTS TO A
NEW PARTY.]

For value received, the above Note is assigned and transferred to

_____, ("Assignee") of

_____  _____
(City)(State/province)


_____
(Country)

Dated: ......................................................

By:_____

                Tommy Le

# Exhibit 3

# *PROMISSORY NOTE*

**$100,000.00  <u>Date: September 6, 2022</u>**

For value received, the undersigned **United Forces Enterprises GP, Jacob Dowd, personally and Darin Dowd, personally** of 2581 Nut Tree Road Suite A Vacaville, California 95687 (the "Borrower"), promises to pay to the order of **Steve Vargas** of 3002 Mallorca Lane Davis, CA 95618 (the "Lender"), the sum of **$100,000.00** with interest **from September 6, 2022,** on the unpaid principal at the rate of **25% per year.**

## I. TERMS OF REPAYMENT

### A. Payments

The unpaid principal and accrued interest shall be payable in a balloon payment on Due Date with interest beginning **on September 6, 2022,** and continuing until **December 6, 2022, (the "Due Date"),** at which time the remaining unpaid principal and interest shall be due in full. The principal of $**100,000.00** plus interest of **$6,250.00** will be paid to lender on the Due Date.

### B. Application of Payments

All payments on this Note shall be applied first in interest and the final payment to include all principal and remaining interest.

### C. Late Fee

The Borrower promises to pay a late charge of $500.00 for each installment that remains unpaid more than **5 day(s) after its Due Date.** This late charge shall be paid as liquidated damages in lieu of actual damages, and not as a penalty. Payment of such late charge shall, under no circumstances, be construed to cure any default arising from or relating to such late payment.

The Borrower promises to pay a default interest rate of 40% annually on the entire principal if the borrower does pay all the principal and interest in full by **December 6, 2022**.

### D. Acceleration of Debt

If any payment obligation under this Note is not paid when due, the remaining unpaid principal balance and any accrued interest shall become due immediately at the option of the Lender.

## II. PREPAYMENT

The Borrower reserves the right to prepay this Note (in whole or in part) prior to the Due Date with no prepayment penalty. Any such prepayment shall be applied against the installments of principal due under this note in the inverse order of their maturity and shall be accompanied by payment of accrued interest on the amount prepaid to the date of prepayment.

## Ill. COLLECTION COSTS

If any payment obligation under this Note is not paid when due, the Borrower promises to pay all costs of collection, including reasonable attorney fees, whether or not a lawsuit is commenced as part of the collection process.

## IV. DEFAULT

If any of the following events of default occur, this Note and any other obligations of the Borrower to the Lender, shall become due immediately, without demand or notice:

    1) the failure of the Borrower to pay the principal when due;

    2) the liquidation, dissolution, incompetency or death of the Borrower;

    3) the filing of bankruptcy proceedings involving the Borrower as a debtor;

    4) the application for the appointment of a receiver for the Borrower;

    5) the making of a general assignment for the benefit of the Borrower's creditors;

    6) the insolvency of the Borrower;

    7) a misrepresentation by the Borrower to the Lender for the purpose of obtaining or extending credit; or

    8) the sale of a material portion of the business or assets of the Borrower.

## V. SEVERABILITY OF PROVISIONS

If any one or more of the provisions of this Note are determined to be unenforceable, in whole or in part, for any reason, the remaining provisions shall remain fully operative.

## VI. MISCELLANEOUS

All payments of principal on this Note shall be paid in the legal currency of the United States. The Borrower waives presentment for payment, protest, and notice of protest and demand of this Note.

No delay in enforcing any right of the Lender under this Note, or assignment by Lender of this Note, or failure to accelerate the debt evidenced hereby by reason of default in the payment of a monthly installment or the acceptance of a past-due installment shall be construed as a waiver of the right of Lender to thereafter insist upon strict compliance with the terms of this Note without notice being given to Borrower. All rights of the Lender under this Note are cumulative and may be exercised concurrently or consecutively at the Lender's option.

This note may not be amended without the written approval of the holder.

## VII. GOVERNING LAW

This Note shall be construed in accordance with the laws of the State of California.

## VIII. GUARANTY

**United Services Enterprises GP, Jacob Dowd, personally, and Darin Dowd, personally unconditionally guarantees** all the obligations of the Borrower under this Note and agrees that any modifications of the terms of payment or extension of time of payment shall in no way impair its guarantee, and expressly agrees its guarantee of any modifications or extensions of this Note.

## IX. SIGNATURES

This Note shall be signed by United Forces Enterprises, Jacob Dowd, Darin Dowd and Steve Vargas.

**[SIGNATURE PAGE
FOLLOWS]**

**IN WITNESS WHEREOF,** this Agreement has been executed and delivered in the manner prescribed by law as of the date first written above.

Signed this 6th day of September 2022, at Sacramento, California.

Borrower:

United Services Enterprises GP, Jacob Dowd and Darin Dowd

By: _____
                        Jacob Dowd

By: _____
                        Darin Dowd

Lender:

Steve Vargas

By: _____
                        Steve Vargas

ASSIGNMENT

[ONLY COMPLETE THE FOLLOWING INFORMATION TO ASSIGN PAYMENTS TO A NEW PARTY.]

For value received, the above Note is assigned and transferred to

_____, ("Assignee") of

_____  _____
(City)(State/province)


_____
(Country)

Dated: ......................................................

By:_____

                    Steve Vargas

Exhibit 4

*PROMISSORY NOTE*

**$150,000.00  Date: September 9, 2022**

For value received, the undersigned **United Forces Enterprises GP, Jacob Dowd, personally and Darin Dowd, personally** of 2581 Nut Tree Road Suite A Vacaville, California 95687 (the "Borrower"), promises to pay to the order of **Derek Mandelaris** of 2618 Emerald Bay Drive Davis, CA 95616 (the "Lender"), the sum of **$150,000.00** with interest **from September 9, 2022,** on the unpaid principal at the rate of **30% per year.**

## I. TERMS OF REPAYMENT

### A. Payments

The unpaid principal and accrued interest shall be payable in a balloon payment on Due Date with interest beginning **on September 9, 2022,** and continuing until **December 2, 2022, (the "Due Date"),** at which time the remaining unpaid principal and interest shall be due in full. The principal of **$150,000.00** plus interest of **$11,250.00** will be paid to lender on the Due Date.

### B. Application of Payments

All payments on this Note shall be applied first in interest and the final payment to include all principal and remaining interest.

### C. Late Fee

The Borrower promises to pay a late charge of $500.00 for each installment that remains unpaid more than **5 day(s) after its Due Date.** This late charge shall be paid as liquidated damages in lieu of actual damages, and not as a penalty. Payment of such late charge shall, under no circumstances, be construed to cure any default arising from or relating to such late payment.

The Borrower promises to pay a default interest rate of 40% annually on the entire principal if the borrower does pay all the principal and interest in full by **December 9, 2022**.

### D. Acceleration of Debt

If any payment obligation under this Note is not paid when due, the remaining unpaid principal balance and any accrued interest shall become due immediately at the option of the Lender.

## II. PREPAYMENT

The Borrower reserves the right to prepay this Note (in whole or in part) prior to the Due Date with no prepayment penalty. Any such prepayment shall be applied against the installments of principal due under this note in the inverse order of their maturity and shall be accompanied by payment of accrued interest on the amount prepaid to the date of prepayment.

### III. COLLECTION COSTS

If any payment obligation under this Note is not paid when due, the Borrower promises to pay all costs of collection, including reasonable attorney fees, whether or not a lawsuit is commenced as part of the collection process.

### IV. DEFAULT

If any of the following events of default occur, this Note and any other obligations of the Borrower to the Lender, shall become due immediately, without demand or notice:

    1) the failure of the Borrower to pay the principal when due;

    2) the liquidation, dissolution, incompetency or death of the Borrower;

    3) the filing of bankruptcy proceedings involving the Borrower as a debtor;

    4) the application for the appointment of a receiver for the Borrower;

    5) the making of a general assignment for the benefit of the Borrower's creditors;

    6) the insolvency of the Borrower;

    7) a misrepresentation by the Borrower to the Lender for the purpose of obtaining or extending credit; or

    8) the sale of a material portion of the business or assets of the Borrower.

### V. SEVERABILITY OF PROVISIONS

If any one or more of the provisions of this Note are determined to be unenforceable, in whole or in part, for any reason, the remaining provisions shall remain fully operative.

### VI. MISCELLANEOUS

All payments of principal on this Note shall be paid in the legal currency of the United States. The Borrower waives presentment for payment, protest, and notice of protest and demand of this Note.

No delay in enforcing any right of the Lender under this Note, or assignment by Lender of this Note, or failure to accelerate the debt evidenced hereby by reason of default in the payment of a monthly installment or the acceptance of a past-due installment shall be construed as a waiver of the right of Lender to thereafter insist upon strict compliance with the terms of this Note without notice being given to Borrower. All rights of the Lender under this Note are cumulative and may be exercised concurrently or consecutively at the Lender's option.

This note may not be amended without the written approval of the holder.

### VII. GOVERNING LAW

This Note shall be construed in accordance with the laws of the State of California.

### VIII. GUARANTY

**United Forces Enterprises GP, Jacob Dowd, personally, and Darin Dowd, personally unconditionally guarantees** all the obligations of the Borrower under this Note and agrees that any modifications of the terms of payment or extension of time of payment shall in no way impair its guarantee, and expressly agrees its guarantee of any modifications or extensions of this Note.

### IX. SIGNATURES

This Note shall be signed by United Forces Enterprises, Jacob Dowd, Darin Dowd and Derek Mandelaris.

**[SIGNATURE PAGE**
**FOLLOWS]**

**IN WITNESS WHEREOF,** this Agreement has been executed and delivered in the manner prescribed by law as of the date first written above.

Signed this 9th day of September 2022, at Davis, California.

Borrower:

United Forces Enterprises GP, Jacob Dowd and Darin Dowd

By: _____
                    Jacob Dowd

By: _____
                    Darin Dowd

Lender:

Derek Mandelaris

By: _____
                    Derek Mandelaris

**IN WITNESS WHEREOF,** this Agreement has been executed and delivered in the manner prescribed by law as of the date first written above.

Signed this 9th day of September 2022, at Davis, California.

Borrower:

United Forces Enterprises GP, Jacob Dowd and Darin Dowd

By: _____
                        Jacob Dowd

By: _____
                        Darin Dowd

Lender:

Derek Mandelaris

By: _____
                        Derek Mandelaris

ASSIGNMENT

[ONLY COMPLETE THE FOLLOWING INFORMATION TO ASSIGN PAYMENTS TO A NEW PARTY.]

For value received, the above Note is assigned and transferred to

_____, ("Assignee") of

_____ _____

(City)(State/province)

_____

(Country)

Dated: ......................................................

By:_____

                    Derek Mandelaris

Exhibit 5

# *PROMISSORY NOTE*

**$400,000.00  Date: September 9, 2022**

For value received, the undersigned **United Forces Enterprises GP, Jacob Dowd, personally and Darin Dowd, personally** of 2581 Nut Tree Road Suite A Vacaville, California 95687 (the "Borrower"), promises to pay to the order of **Michael Schimmel** of 2335 American River Drive Suite 200 Sacramento, CA 95825, **Tommy Le** of 2335 American River Drive Suite 200 Sacramento, CA, 95825 (the "Lender"), the sum of **$400,000.00** with interest **from September 9, 2022,** on the unpaid principal at the rate of **40% per year.**

## I. TERMS OF REPAYMENT

The accrued interest shall be payable in monthly installments of **$13,333.33** interest only **beginning on October 5, 2022,** and continuing until **March 9, 2023, (the "Due Date"),** at which time the remaining unpaid principal and interest shall be due in full.  Monthly payments of **$13,333.33** are due on the 5th of every month until the Due Date.  The principal of **$400,000.00** plus a total of **$80,000.00** in total interest payments are included in this note.

### A. Application of Payments

All payments on this Note shall be applied first in interest and the final payment to include all principal and remaining interest.

### B.  Late Fee

The Borrower promises to pay a late charge of $500.00 for each installment that remains unpaid more than **5 day(s) after its Due Date.** This late charge shall be paid as liquidated damages in lieu of actual damages, and not as a penalty. Payment of such late charge shall, under no circumstances, be construed to cure any default arising from or relating to such late payment.

The Borrower promises to pay a default interest rate of 40% annually on the entire principal if the borrower does pay all the principal and interest in full by **March 9, 2023**.

### C. Acceleration of Debt

If any payment obligation under this Note is not paid when due, the remaining unpaid principal balance and any accrued interest shall become due immediately at the option of the Lender.

## II. PREPAYMENT

The Borrower reserves the right to prepay this Note (in whole or in part) prior to the Due Date with no prepayment penalty. Any such prepayment shall be applied against the installments of principal due under this note in the inverse order of their maturity and shall be accompanied by payment of accrued interest on the amount prepaid to the date of prepayment.

## Ill. COLLECTION COSTS

If any payment obligation under this Note is not paid when due, the Borrower promises to pay all costs of collection, including reasonable attorney fees, whether or not a lawsuit is commenced as part of the collection process.

## IV. DEFAULT

If any of the following events of default occur, this Note and any other obligations of the Borrower to the Lender, shall become due immediately, without demand or notice:

   1) the failure of the Borrower to pay the principal when due;

   2) the liquidation, dissolution, incompetency or death of the Borrower;

   3) the filing of bankruptcy proceedings involving the Borrower as a debtor;

   4) the application for the appointment of a receiver for the Borrower;

   5) the making of a general assignment for the benefit of the Borrower's creditors;

   6) the insolvency of the Borrower;

   7) a misrepresentation by the Borrower to the Lender for the purpose of obtaining or extending credit; or

   8) the sale of a material portion of the business or assets of the Borrower.

## V. SEVERABILITY OF PROVISIONS

If any one or more of the provisions of this Note are determined to be unenforceable, in whole or in part, for any reason, the remaining provisions shall remain fully operative.

## VI. MISCELLANEOUS

All payments of principal on this Note shall be paid in the legal currency of the United States. The Borrower waives presentment for payment, protest, and notice of protest and demand of this Note.

No delay in enforcing any right of the Lender under this Note, or assignment by Lender of this Note, or failure to accelerate the debt evidenced hereby by reason of default in the payment of a monthly installment or the acceptance of a past-due installment shall be construed as a waiver of the right of Lender to thereafter insist upon strict compliance with the terms of this Note without notice being given to Borrower. All rights of the Lender under this Note are cumulative and may be exercised concurrently or consecutively at the Lender's option.

This note may not be amended without the written approval of the holder.


## VII. GOVERNING LAW

This Note shall be construed in accordance with the laws of the State of California.

## VIII. GUARANTY

**United Forces Enterprises GP, Jacob Dowd, personally, and Darin Dowd, personally unconditionally guarantees** all the obligations of the Borrower under this Note and agrees that any modifications of the terms of payment or extension of time of payment shall in no way impair its guarantee, and expressly agrees its guarantee of any modifications or extensions of this Note.

## IX. SIGNATURES

This Note shall be signed by United Forces Enterprises, Jacob Dowd, Darin Dowd and Michael Schimmel and Tommy Le.

**[SIGNATURE PAGE**
**FOLLOWS]**

**IN WITNESS WHEREOF,** this Agreement has been executed and delivered in the manner prescribed by law as of the date first written above.

Signed this 9th day of September 2022, at Sacramento, California.

Borrower:

United Forces Enterprises GP, Jacob Dowd and Darin Dowd

By: _____
                Jacob Dowd

By: _____
                Darin Dowd

Lender:

Michael Schimmel

By: _____
                Michael Schimmel

Tommy Le

By: _____
                Tommy Le

ASSIGNMENT

[ONLY COMPLETE THE FOLLOWING INFORMATION TO ASSIGN PAYMENTS TO A NEW PARTY.]

For value received, the above Note is assigned and transferred to

_____, ("Assignee") of

_____ _____
(City)(State/province)

_____
(Country)

Dated: .......................................................

By:_____

                Michael Schimmel

By:_____

                Tommy Le

# Exhibit 6

# PROMISSORY NOTE

**1. THE PARTIES.** On October 1, 2022, United Forces Enterprises GP, of 2581 Nut Tree Road Suite A, Vacaville, CA, 95687 with Jacob Dowd and Darin Down acting as Partners, referred to as the "Borrower",

**HAS RECEIVED AND PROMISES TO PAY:**

MBOCAL, a California Finance Lender and California Corporation, located at 970 Reserve Drive, Suite 200, Roseville, California, 95678 with Jason Bartlett acting as CEO, referred to as the "Lender", the sum of **$350,000.00** US Dollars, referred to as the "Borrowed Money", with interest accruing on the unpaid balance at a rate of Forty Percent (40%) per annum, referred to as the "Interest Rate", beginning on November 1, 2022 under the following terms and conditions:

**2. PAYMENTS**. The full balance of this Note, including any accrued interest and late fees, is due and payable on February 1, 2023, referred at as the "Due Date". The Borrower shall pay interest-only monthly installments on November 1, 2022, December 1, 2022, January 1, 2023, and February 1, 2023.

Once the total interest has been paid, all remaining unpaid principal shall be paid in-full on the Due Date. Money that is not paid by the Borrower on time for any installment will continue to be charge the Interest Rate stated in this Note.

**3. LATE FEE.** The Borrower promises to pay a late fee of Five Hundred Dollars ($500.00) for each installment that remains unpaid more than 5 days after it is due. This late fee shall be paid as liquidated damages in lieu of actual damages, and not as a penalty. Payment of such late charge shall, under no circumstances, be construed to cure any default arising from or relating to such late payment.

**4. DEFAULT.** Any one of the following events shall constitute a default by the Borrower:

4.1. Failure to pay the principal by April 1, 2023;

4.2. Liquidation, dissolution, incompetency or death of the Borrower;

4.3. Bankruptcy filing involving the Borrower as a debtor;

4.4. Application for the appointment of a receiver for the Borrower;

4.5. Execution of a General Assignment for the benefit of the Borrower's creditors'

4.6. Insolvency of the Borrower;

4.7. Misrepresentation by the Borrower to the Lender for the purpose of obtaining or extending credit; OR

4.8. Sale of a material portion of the business or assets of the Borrower.

**5. SECURITY**. There shall be no Security put forth by the Borrower in this promissory note.

**6. ALLOCATION OF PAYMENTS.** Payments shall be first credited to any late fees due, then to interest due and any remainder will be credited to principal.

**7. ACCELERATION.** If the Borrower is in default under this Note or is in default under another provision of this Note, and such default is not cured within the minimum allotted time by law after written notice of such default, then Lender may, at its option, declare all outstanding sums owed on this Note to be immediately due and payable.

**8. ATTORNEYS' FEES AND COSTS.** Borrower shall pay all costs incurred by Lender in collecting sums due under this Note after a default, including reasonable attorneys' fees. If Lender or Borrower sues to enforce this Note or obtain a declaration of its rights hereunder, the prevailing party in any such proceeding shall be entitled to recover its reasonable attorneys' fees and costs incurred in the proceeding (including those incurred in any bankruptcy proceeding or appeal) from the non-prevailing party.

**9. WAIVER OF PRESENTMENTS.** Borrower waives presentment for payment, a notice of dishonor, protest, and notice of protest.

**10. NON-WAIVER.** No failure or delay by Lender in exercising Lender's rights under this Note shall be considered a waiver of such rights.

**11. SEVERABILITY.** In the event that any provision herein is determined to be void or unenforceable for any reason, such determination shall not affect the validity or enforceability of any other provision, all of which shall remain in full force and effect.

**12. INTEGRATION.** There are no verbal or other agreements that modify or affect the terms of this Note. This Note may not be modified or amended except by a written agreement signed by Borrower and Lender.

**13. CONFLICT TERMS.** The terms of this Notice shall have authority and precedence over any conflicting terms in any referenced agreement or document.

**14. NOTICE.** Any notices required or permitted to be given hereunder shall be given in writing and shall be delivered (a) in person, (b) by certified mail, postage prepaid, return receipt requested, (c) by facsimile, or (d) by a commercial overnight courier that guarantees next day delivery and provides a receipt, and such notices shall be made to the parties at the addresses listed below.

**15. GUARANTORS.** Jacob Down and Darin Dowd, referred to as the "Guarantors", agree to the liabilities and obligations on behalf of the Borrower under the terms of this Notice. If the Borrower does not make payment, the Guarantors shall be personally responsible and are guaranteeing the payment of the principal, late fees, and all accrued interest under the terms of this Note.

**16. EXECUTION.** The Borrower executes this Note as a principal and not as a surety. If there is a Co-Signer, the Borrower and Co-Signer shall be jointly and severally liable under this Note.

**17. GOVERNING LAW.** This note shall be governing under the laws in the State of California.

**18. USURY EXEMPTION.** This transaction is exempt from the usury limitations imposed by the California State Constitution pursuant to Section 25118 of the California Corporations Code. The

Borrower represents and warrants to the Lender that it has, by reason of its own business and financial experience, and that of its counsel and other professional advisors, the capacity to protect its own interests in connection with the transactions contemplated by this Agreement, and that its acceptance of the interest rates and other pricing components associated with the Obligations has been made in the full exercise of that capacity, and with the advice of its counsel.

**IN WITNESS WHEREOF,** this Agreement has been executed and delivered in the manner prescribed by law as of the date first written above.

Signed this 1st day of October 2022, at Sacramento, California.

**Borrower:**     **United Forces Enterprises GP, Jacob Dowd and Darin Dowd**

By: _____

Jacob Dowd, individually and as General Partner of United Forces Enterprises

By: _____

Darin Dowd, individually and as General Partner of United Forces Enterprises GP

**Lender:**     **MBOCAL, a California Finance Lender and Corporation**

By: _____

Jason Bartlett, its Chief Executive Officer

Exhibit 7

# CONSULTING AGREEMENT

This **AGREEMENT**, made on this 19th day of May, 2023, between Eli Lazar (hereinafter "Lazar") of Las Vegas, Nevada and Jason Bartlett, JKB Financial (hereinafter "JKB"), Michael "Mick" Schimmel (hereinafter "Schimmel") and Kronstadt Advisory Services (Hereinafter "KSA") Ltd of Atlanta, GA referred to together the "Parties" is as follows:

**INASMUCH** as the original purchase, import and sale plan is no longer viable;

**NOW, THEREFORE**, the Parties have determined that the synergies of working together to dispose of the ammunition which is the subject of this Agreement (see following paragraph) is in the best interest of the Parties, JKB and Schimmel have decided to pay Lazar & KSA as Consultants on this ammunition sale.

The ammunition which is the subject of this Consulting Agreement consists of five million, five hundred seventy-six thousand and five hundred and seventy-nine pieces (5,576,579). More specifically, it is two million and four hundred thousand (2,400,000) pieces of Sellier & Bellot 7.62x39 T-45 WZ43 and three million, one hundred and seventy-six thousand, five hundred seventy-nine pieces of 7.62x39 manufactured by Mesko.

The Parties Agree to shepherd the sale of the afore-mentioned ammunition and to do everything possible to bring it to a successful conclusion.

JKB and Schimmel Agree to pay Lazar & KSA Ten Thousand Dollars ($10,000.00) in total for these services. This payment is not success based, but, rather, best efforts. It should, therefore, be paid at the inception of the contract.

In recognition of their acceptance of the above terms and conditions the Parties hereby affix their signatures on the date first noted above.

_____
Eli Lazar

_____
Michael Schimmel

_____
Jason Bartlett, JKB Financial

Kronstadt Advisory Services Ltd.

_____
Paul F. Jannuzzo Esq.